United States District Court, District of Nebraska

| | |
|---|---|
| **Lyle Nettles and Karla Gutierrez,** **Plaintiffs**, <br><br> vs. <br><br> **Deputy Tyson Osborne, in his individual capacity; and Sheriff Alan Moore, in his individual and official capacities;** <br><br> **Defendants**. | Case No. 4:25-CV-3102 <br><br> **Complaint** <br> **(42 USC §1983)** |

## Introduction

1. Though they had committed no traffic infraction, Deputy Osborne initiated a traffic stop of the vehicle operated by Carla Gutierrez and subjected her and her passenger, Lyle Nettles, to continued detention without legal authority and unlawfully searched their vehicle.

2. No contraband was located. Ms. Gutierrez and Mr. Nettles were completely innocent. Mr. Nettles is a sworn law enforcement officer. At all times, he and Ms. Gutierrez were fully aware their rights under the 4th Amendment were being violated.

3. Plaintiff Lyle Nettles is black. His wife, Carla Gutierrez, is Hispanic.

4. When Nettles protested the stop after returning to his home in Illinois, Defendants Moore and Osborne punished him, by putting him on a list of suspected drug smugglers, and by calling his employer and former employers.

## Parties

1. Both Nettles and Gutierrez are residents of the State of Illinois.

2. Deputy Osborne is a law enforcement officer employed by the Saline County Sheriff. He has received training regarding how to employ a canine to search for contraband. At all times relevant herein, he was acting under color of law. He is sued in his individual capacity.

3. Alan Moore is the Saline County Sheriff. At all times relevant herein he acted under color of law. He is sued in his official capacity.

## Jurisdiction

4. The Court exercises federal question jurisdiction pursuant to 28 USC §1331.

5. Venue is appropriate because all events occurred in the District of Nebraska.

## Facts

6. On July 27, 2024, Plaintiffs were traveling through Nebraska on Eastbound Interstate 80 near mile marker 379 in the early afternoon hours.

7. Interstate 80 is heavily patrolled by persons acting under color of law who are primarily interested in identifying and arresting persons in possession of substances, including marijuana, prohibited by law.

8. It is not uncommon for officers patrolling the interstate for illegal drugs to disregard and violate the rights of interstate travelers.

9. Some officers patrolling the interstate for illegal drugs have a canine with them. According to the officer, the canine is trained to reliably detect the odor of certain controlled substances and able to reliably report detection of such odors to the law-enforcement officer who uses them by demonstrating a trained response, such as sitting and staring at the area of the target vehicle where they detected the odor of controlled substances.

10. It is not uncommon for officers patrolling the interstate for illegal drugs to fabricate the basis to conduct a traffic stop or to search a vehicle stopped, including that their canine "hit" on the vehicle.

11. It is not uncommon for officers patrolling the interstate for illegal drugs to care little about what happens in subsequent legal proceedings, believing their mission is accomplished if illegal drugs are seized.

12. Officers engaged patrolling the interstate for drugs are rarely, if ever, reprimanded or disciplined by their superiors for violating the constitutional rights of interstate travelers, even when the constitutional violation results from racial profiling.

13. The allegations made in paragraphs 8 through 13 above apply to Osborne and Moore.

*

14. Neither Nettles nor Gutierrez have criminal records. Nettles is a sworn law enforcement officer in the State of Illinois.

15. Ms. Gutierrez operated the vehicle occupied by her and Nettles lawfully without committing any traffic violations.

16. Nothing about Nettles and Gutierrez, or the car in which they traveled, was either suspicious or inconsistent with lawful interstate travel by the common law-abiding citizen.

17. As Gutierrez and Nettles traveled Eastbound, Deputy Osborne conducted a traffic stop of the vehicle. Upon approach of their vehicle, Deputy Osborne claimed he had stopped the vehicle for following too closely.

18. Though his cruiser is equipped with recording equipment that could have been used to capture video of Ms. Gutierrez's alleged traffic violation, no such recording was made.

19. Ms. Gutierrez did not follow any vehicle too closely. The claim made by Deputy Osborne is fabricated.

20. After initiating the stop, Deputy Osborne commenced a drug criminal/drug investigation in the absence of any predicate fact for doing so, and in the absence of reasonable suspicion or any other lawful basis.

21. Nothing Osborne observed or perceived after approaching the vehicle and making contact with Nettles and Gutierrez could have created suspicion of illegal activity. Nothing about them was materially different than the average American interstate traveler:

    a. They were dressed normally.

    b. They acted normally.

    c. They explained they were traveling back home to Illinois.

    d. They utilized a sensible route along Interstate 80 for their travel.

    e. The interior of their car provided no indication of illegal activity.

22. Osborne continued and extended the period of detention longer than any officer would to simply issue a warning or citation for the alleged offense of following too closely.

23. In the absence of reasonable suspicion to believe Nettles and Gutierrez illegally possessed drugs, or were involved in any criminal activity, Osborne unlawfully extended the detention of Nettles and Gutierrez to utilize a canine to sniff the exterior of the vehicle.

24. On information and belief, the canine was poorly trained and unreliable as a tool to provide Osborne information sufficiently reliable to deprive citizens of their constitutional rights. Osborne knew it.

25. Contrary to his training, Osborne led the canine around the vehicle on a short leash while Nettles, seated in Osborne's cruiser behind the rental vehicle, was able to observe the canine.

26. Nettles observed that the canine did not "hit" on the vehicle, that is, he did not sit and stare at the vehicle as he is trained to do when he detects the odor of controlled substances.

27. Nonetheless, Osborne falsely told Nettles the dog had hit on the trunk. Nettles knew this was another fabricated basis to detain Nettles and Gutierrez.

28. Osborne proceeded to physically search the vehicle in the absence of consent, probable cause or other lawful authority.

29. Osborne found no contraband or evidence of illegal behavior. Not a whit. Nothing explaining any asserted behavior of the canine.

30. Osborne found some tea leaves in the back seat. The tea leaves were packaged in a normal fashion after being purchased by Ms. Gutierrez during Plaintiffs' travels.

31. Osborne became visibly excited upon discovering the leaves and field tested the leaves to see if they were controlled substances.

32. Upon receiving a negative result, Deputy Osborne continued searching the vehicle.

33. The traffic stop lasted 49 minutes and yielded no evidence of wrongdoing. No citations were issued. No arrests were made. Gutierrez and Nettles were eventually allowed to continue their travels.

34. All of Osborne's actions, alleged above herein, were motivated by his observation Nettles is Black and Gutierrez is Hispanic.

*

35. As a sworn law-enforcement officer aware of his rights and of proper police procedure, Nettles knew he had been violated and believed he had been racially profiled.

36. After the two Plaintiffs had finished their travels and returned to Illinois, Nettles contacted the Sheriff's office and spoke to Captain Zimmerman on July 29, 2024,

asking for the opportunity to make a formal complaint and for a copy of any reports regarding the matter.

37. Nettles complained to Sheriff Moore or his agents that he and his wife were being harassed or discriminated against on the basis of race.

38. Nettles reasonably believed that he and Gutierrez were being harassed and discriminated against on the basis of race because they knew they had not committed a traffic violation and knew that they were both people of color who had been subjected to a traffic stop and prolonged detention in the absence of any circumstances supporting a belief they were involved in illegal activity.

39. On July 31, Nettles was contacted by Captain Zimmerman and informed Nettles no reports would be provided because the case was closed with no wrongdoing.

40. Thereafter, Defendant Moore or his deputies or other agents provided his name to one or more law-enforcement agencies or other entities who collect and provide data used by law-enforcement agents to determine whether a motorist is a potential drug smuggler.

41. On information and belief, Defendant Moore or his deputies or other agents also contacted Nettles' current and former employers and informed them they were naming Nettles as a potential drug smuggler in correspondence sent to the Drug Enforcement Administration.

42. The conduct of Osborne and Moore could be expected to dissuade or chill a person of ordinary firmness from reporting racial discrimination or harassment.

43. On October 23, 2024, Nettles and Gutierrez sent, through counsel, correspondence requesting that evidence be preserved, including any communications regarding Nettles being a potential drug smuggler.

44. The letter, attached hereto as Exhibit A, alleges *inter alia*:

> Sheriff, Mr. Nettles is also informed that you or a person acting on your behalf called Mr. Nettles' current employer and a former employer, telling them you have provided Mr. Nettles name to the DEA as a potential drug trafficker. Please preserve all records regarding this conduct as well, including any and all phone records between August 13 and the present and any correspondence or communications referring to Mr. Nettles or his wife made to the DEA or any other law-enforcement agency or related entity.

45. Though Nettles, through his agents, attempted to follow up on the letter by making calls to the Sheriff and to the Saline County, neither the Sheriff, Captain Zimmerman, nor any other representative of the Sheriff's Office has responded to the letter.

46. At all times relevant herein, Defendant Osborne and Defendant Moore were motivated by evil motive or intent, or alternatively, were recklessly indifferent to the rights of Nettles and Gutierrez.

### First Claim – Fourth Amendment

47. By effectuating a traffic stop in the absence probable cause or reasonable suspicion of a traffic offense or other criminal activity, Osborne violated their clearly established protections afforded by the Fourth and Fourteenth Amendments of the United States Constitution.

48. As a direct and proximate result of the illegal traffic detention, Gutierrez and Nettles suffered, and continue to suffer, emotional harm.

## Second Claim – Fourth Amendment

49. By detaining Gutierrez Deputy Osborne so that his poorly trained canine could sniff their car, in the absence of reasonable suspicion to believe they were in possession of contraband or involved in criminal activity, Osborne violated their clearly established protections afforded by the Fourth and Fourteenth Amendments of the United States Constitution.

50. As a direct and proximate result of the prolonged detention, Gutierrez and Nettles suffered, and continue to suffer, emotional harm.

## Third Claim – Fourth Amendment

51. Osborne physically searched the vehicle in the absence of probable cause.

52. By physically searching the vehicle, Osborne violated Plaintiffs' clearly established rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

53. As a direct and proximate result of Osborne's illegal search, Gutierrez and Nettles suffered, and continue to suffer, emotional harm.

## Fourth Claim – Fourteenth Amendment

54. By subjecting Nettles and Gutierrez to a traffic stop, prolonged detention, and search of their car based solely on the fact they are people of color, Osborne violated their clearly established right to the equal protection of the laws and to due process, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

55. As a direct and proximate result of being racially profiled, Gutierrez and Nettles suffered and continue to suffer emotional harm.

## Fifth Claim – Fourteenth Amendment

56. Moore and Osborne caused Nettles's employers to be called, and for Nettles to be reported as a potential drug smuggler to the Drug Enforcement Agency or other agencies working with law-enforcement, in retaliation against his complaints and request for records and recordings and because his is Black.

57. By calling Nettles's employers and by reporting him as a potential drug smuggler, Moore and Osborne violated Nettles's clearly established rights under the Fourteenth Amendment of the United States Constitution.

58. As a direct and proximate result of the illegal traffic detention, Gutierrez and Nettles suffered, and continue to suffer, emotional harm.

## Relief

59. Lyle Nettles adn Karla Gutierrez each separately request judgment in their favor awarding such damages as will fairly and justly compensate them, to include compensatory damages for the deprivation of their constitutional rights and the attendant emotional harm and anxiety resulting therefrom.

60. Lyle Nettles and Karla Gutierrez each separately request judgment in their favor awarding punitive damages against each Defendant.

61. Lyle Nettles and Karla Gutierrez each separately request judgment in their favor awarding attorney fees and costs.

**Rule 38 Demand for Jury**

62. In accordance with Rule 38 Fed. R. Civ. P., JOHNSON demands a jury and asks that this case be designated on the docket as a jury action

                                        LYLE NETTLES AND
                                        CARLA GUTIERREZ, Plaintiffs

                                        By:   /s/ *Adam J. Sipple,* #20557

                                                **SIPPLE LAW**
                                                12020 Shamrock Plaza
                                                Ste. 200
                                                Omaha, NE 68154
                                                402.778.5055
                                                adam@sipple.law